Next case is number 19-3903 United States against Monte Barry. Ms. Petropalo, double duty this week. Welcome back. Good morning, Your Honor. Thank you. May it please the Court, Rene Petropalo for Appellant Monte Barry. With the Court's permission, I'd like three minutes for rebuttal.  I'd like a reprise of part of yesterday for the 3701A1. Hopefully. Maybe. Ms. Petropalo, could I begin with really just a procedural question that bothers me and that is, and this may have first appeared in your reply brief, the government bears the sole burden of production and persuasion. What's your authority for that? I'll agree with you on persuasion, but production? Oh, for career offender, Your Honor, for proving sentencing enhancements, it is the government's burden of production and persuasion. I say in my... How does that unfold here? I mean, it just is a broad statement and I just want to understand how the government first went forward, which is what production implies. In this case, it's really not relevant. I do cite Supreme Court authority for that proposition.  But we all agree... Well, you cited PEREA, I believe, that it is, or PERETA. Yeah, sure. But we all agree in this case that the government put forward evidence and the conviction was for A1. So production is not really... I understand that's not an issue in the case. It was just the flat statement that I wanted to get to and understand what was meant by it. Sure. Okay. So the question in this case is one of first impression, Your Honor. It's whether the elements of Subsection 1 of Pennsylvania's robbery statute match the elements of generic robbery. The answer is no for several reasons, the most straightforward of which is that robbery by reckless infliction of serious bodily injury by its plain statutory text lacks generic robberies from the person or immediate presence requirement. So you've already done some of the work on this issue. The Third Circuit has three times defined generic robbery as having three elements of a taking of property from the person or immediate presence of another by force or intimidation. And so now we turn to Pennsylvania robbery. And the clearest example of Pennsylvania robbery's overbreath is that the person or present requirement is missing from Subsection 1. And this also probably is not going to figure much, if at all, in our questions. But have you ever conceded divisibility, expressly conceded divisibility? The Third Circuit held that subsection or that Felony 1 robbery is divisible in Henderson. So, yes, we have conceded that point. Have you? All right. In this brief, we don't know. But in the trial court, it was fought. Right. It was an open question at that point. It remained an open question because you wouldn't agree to it in the district court. It remained an open question because Pennsylvania law showed that the F1 statute wasn't divisible. But the Third Circuit has found to the contrary, and we are understanding that that's the ruling and we're no longer articulating a divisibility argument. I almost can't conceive that it would be anything but divisible. Agreed? You don't agree with that? Agreed, but moot point. I disagree, but it's a moot point. We can agree to disagree on Henderson. It's already been the holding, and so there's no point in belaboring that issue. It is A1. You don't have to agree that Henderson's correct. You just have to agree. You just have to agree it's the law. I have to agree it's the law, and I have to follow it, and I am doing so here, and I've made that concession because Henderson is the law. So the reason I'm saying that the person or presence element of generic robbery is the most straightforward way of finding in Mr. Payot's favor is that the parties aren't really disputing that that is an element of generic robbery. The government acknowledges in its brief at page 25 and 26 that a majority of states retain that person or immediate presence requirement. The Second Circuit has already done the work here. They've done the 50-state survey. They've come to that conclusion that the majority of states require this element. So now we look at the elements of Pennsylvania robbery. As a federal court, you're required to look to how Pennsylvania defines its own statutes, and so we're looking at the text of A1, and missing is the person or presence element, and I've pointed in my briefing to McCollum and Brandon. Those are Pennsylvania state cases that are holding under the plain language of this statute the element taking from the person of another is required only as to subsection 5, and the Pennsylvania court in Brandon goes further and holds the trial court erred in concluding that the taking from the person element is implicit throughout the robbery statute. So we have PA courts telling us that Pennsylvania's subsection 1 sweeps more broadly than generic robbery, and I think it's telling that the government's only real comeback to that textual argument is to turn to Duenas-Alvarez and the realistic probability test. This court just reaffirmed it was initially an en banc case and it became a panel decision, and Ngundu, that when the elements of the offense are set forth either in the statute or in case law, don't match the generic definition, no further showing is necessary to establish the state offense is not a categorical match. So subsection 1 on its base is broader than generic robbery. The realistic probability test has no application here. Is another argument really why in drafting this statute would the General Assembly have included sub-Romanet 5 if in fact that conduct extended to A1, Romanet 1? So Pennsylvania robbery used to be common law robbery and then they adopted the model penal code as you know in 1972 and they say we're abandoning that common law understanding of force being sufficient to overcome victim resistance. So that's why we have this A1 subsection. As time went by, the court decided to add that subsection 5, that force however slight element, but it's interesting actually, and I know it's not relevant to this case, but subsection 5 sweeps in that overcoming resistance type, that common law force, but the Pennsylvania authority is very clear that it also sweeps in forceless snatchings. So it's both kinds of force that are swept in by that subsection 5 and not taking from a person of another element. That sort of takes me naturally to the next over-breath argument that I would have for the Pennsylvania statute and that is snatching. Here the government again seems to concede that snatchings would not equal generic robbery. I've pointed your honors to Treatises Lefebvre. We have identified in our briefing at pages 26 and 27 that a minority of states allow robbery to rest on a mere snatching and at least the Fourth Circuit and the First Circuit have already held that generic robbery doesn't encompass snatchings. That's the Gaddis and Fluker opinions and the First Circuit it's Rab, R-A-B-B. So they've already held that point and then so again now we turn to Pennsylvania law. We have Pennsylvania authority, Pennsylvania Supreme Court authority in Rice and Superior Court in Scott saying that a purse snatching, a mere snatching where injury is inflicted can equal Pennsylvania robbery under sub 1 and if there's threats under sub 2 as well. So we have Pennsylvania authority to support that preposition. We are bound by these rules of federalism where we have to respect Pennsylvania's interpretation of its own statutes. How would purse snatching not involve de minimis force or intimidation? So de minimis force, in Graves your honors talked about de minimis force and you defined de minimis force as force sufficient to overcome resistance. I say that because in that case you were looking to a North Carolina statute, North Carolina case and you were specifically talking about the robber who grabs an item off of a store clerk and pushes that store clerk's hands off the item as we're taking that item. That is force to overcome victim resistance. You identify that or you deem that de minimis force but it is force sufficient to overcome resistance and we know that's the North Carolina standard because Stoeckling puts North Carolina in the bucket of states that require that common law force, that force overcoming resistance. De minimis force is not the same as de minimis contact. Stoeckling makes that clear as well. So snatching doesn't rise to the level of force sufficient to overcome resistance and that de minimis force... Because your premise is that snatching can occur without any resistance. Exactly. A snatching, it's surprise. Sometimes the person will feel it and resist. Sometimes the purse is gone before you know it. Exactly and that's what the case law supports. In Stoeckling you mean, is that what you're referring to or for PA are you referring to Rice? PA I'm referring to Rice and I'm referring to Scott. Scott's the case where the victim is standing at a bus. She's got the purse dangling from her arm. The assailant comes, grabs the purse and runs. We talked about this yesterday. Is there any finding of force at all in Rice? Is there any finding of force? There is not, Your Honor. The testimony from the defendant... We're kind of assuming that, are we not? I'm not sure how much Rice really does help. Yeah, I understand your point. We have testimony from the defendants in that case that they decided to snatch the purse and they were targeting this victim because she was intoxicated and staggering and the testimony is that they ran toward her from behind and grabbed the purse. There's no reference to a struggle. There's no reference to a jostle. It's that the victim spun around and fell and hit her head. So it's a surprise taking a snatching and an infliction of injury because she fell as a result of that offense. Scott says the same thing. Purse snatching may rise to the level of burglary if serious bodily injury results or if a person threatens serious bodily injury. So there's no requirement of force. It's all about just a snatching. Is it burglary or robbery? You said burglary. Apologies. Robbery. Ms. Petropaula, let me ask you a different question. Let's assume that we agree with you that there's not a match here under the Enumerated Offense Clause. I want to draw your attention to the sentencing colloquy if you have the appendix there. If you could look at Appendix 113 at the bottom. This is the very tail end of Judge Horan's sentencing. And she goes through all the 3553A factors, sets the final guideline range, and at line 20, she says, I believe a sentence of 30 months followed by a supervised release of 3 years is sufficient but not greater than necessary to meet the goals of sentencing in this case. You see that?  I believe this sentence will address the goals of punishment, rehabilitation, and deterrence in your case. I further hold that I would adhere to the sentence even if the guidelines had not been accurately computed. That seems to be a direct statement in adherence with our opinion in Zabilsky where we talked about the fact that after Booker, this whole plus two, minus two guidelines adjustment scheme has a lot less relevance after Booker than it had pre-Booker. I assume you'd agree with that proposition, right? So I understand where you're going. Could you answer that question first? You'd agree with me that pre-Booker, when the guidelines were mandatory, these district court rulings on enhancements, plus two points, minus two points, et cetera, they had very serious significance, did they not? Yes, and they continue to have serious significance. We know we have significant... As much significance now? We know from a series of... In an era of advisory guidelines where this court is affirming frequently below-guideline sentences, above-guideline sentences. You're quite acquainted with Tomco, I'm sure, Judge Smith's opinion for the en banc court. Are you really arguing that now in the advisory guidelines era that there's such similar significance to these enhancements than there was in the pre-Booker regime? Your Honor, yeah, I disagree with your premise. Let's say significance to whom. If you're the guy doing the time and you get it pre-Booker or post-Booker, it certainly has the same significance. But does it have the same significance to the judge in terms of whether it is imposed or not? It does, Your Honor. Let me say two things. These kinds of post-sentencing prophylactic I'm going to guard against appeal statements are not the kind of statements that make a guideline calculation error harmless. I'd point you to the briefing that I filed post-Booker and Langford. It doesn't automatically make it harmless. I'm just asking you why it wouldn't in this case. In the cases where you have found a guideline calculation to be harmless, it has been where, for example, a mandatory minimum was imposed and so no different sentence would have been imposed. That's not Zabielski. There's no mandatory minimum in Zabielski. In Zabielski, we found harmless error in Zabielski and we inferred that the district judge would have imposed the same sentence. Here, the district judge is explicitly holding that she would have imposed the same sentence. In other words, she's making a strong statement, do not waste the appellate court's time, do not waste my time with a remand. The number is 30, and this gentleman deserves 30. That's a strong statement from Judge Horan that this defendant should do 30 months. So if it's less than 30, she just buries upwards no matter what? That could happen in the district court, but in this case, there was significant mitigation presented. If the guideline had been lower... And she listened to that. She talked about it. She talked about his mental health issues. She talked about his very unfortunate childhood. She also talked about the 30 months getting him a little more time on the growth spectrum of getting more toward an age where the brain is fully developed. She covered all that. This is a fulsome record. This is not some sort of drive-by sentencing. Let me take a step back, Your Honor. After... I believe Zabielski is at odds with an earlier decision from this court in Langford. But again, that's what you ruled in Zabielski. After Zabielski came down, the Supreme Court issued an opinion and it said that these guideline ranges operate as anchors. Exactly. And so you have to start from the right point before you vary. That's the point. Cases where courts have found a guideline calculation to be error, I lay them out. I believe it's actually in the reply brief in yesterday's PEO decision because I don't actually recall that the government made a harmless argument in this case. Forgive me if I'm wrong. No, it didn't. I'm looking at, you know... You know that we could affirm for any reason supported by the record and that looks like a potential reason to affirm even if you're right on the enumerated offense argument. I would urge you not to do that. I would urge you to at least give me an opportunity to brief that point. I did brief it in yesterday's PEO case. I point in that case to the Supreme Court authority that supports me and I identified multiple cases in that briefing where if there has been a harmless finding, it has been because, for example, there was a mandatory and the court couldn't have gone any lower. But in a case like this, the judge started with a higher range and she varied down. If she had started with a lower base offense level, why are we to assume she wouldn't have continued to vary down? Just because I would take her at her word. The government has made exactly the opposite argument when they're on the losing side of this kind of argument. They've said this script that a district court uses in the end of a sentence that that is not harmless error if they're on the losing end of the argument. Well, we might disagree with that argument equally. Well, I think it goes to show you that the argument is just not valid. At the end of the day, doesn't it come down to what the appellate judges think about the deference owed to the sentencing judge? And the quality of the work done by the sentencing judge as reflected in the transcript at the sentencing hearing. I am in no way criticizing the district court judge in this case. What I'm saying is a district court judge might say something like, okay, Mr. Perry, if the guidelines were 14 and I was really wrong, I'm going to tell you why I would vary up to this 30 range. We don't have that in this case. There's no sort of... But would you agree in your experience and you've been around a while, by which I mean only that you've gained valuable experience in the years you've served. I don't mean in terms of your... You've been around as long as I have. Don't go there, bro. No, I know. Well, I haven't been around as long as Judge Ambrose, but that's a story for another day. And I'm not even close to either of you. Yeah, that's a story for another day. I resemble that. But wouldn't you agree in your experience that it is not the ordinary case at sentencing for a district judge who had made the statement that Judge Horan did? I was a trial judge for 18 years. When you were a trial judge... For those years in a state. And I'm sure I must have said it at some point, but it certainly wasn't the usual state. It certainly wasn't the usual series of events. I can tell you, Your Honor, that normally was never a usual state. But today in the Western District of Pennsylvania is the only place that I can speak to. There are several judges in our courthouse who routinely add that statement to every sentencing that's part of the script. And so it's another reason why it should be entitled... It's the first time I've seen it. I have seen it over and over and over again. I would urge you to instead look to the Langford opinion. I would urge you to look at the Supreme Court authority that... Why would I look at Langford if you told me that I botched Zabielski by not interpreting Langford properly? Because Langford is correct and it came down first. And Langford was reaffirmed. We actually... We took... We were familiar with Langford when we decided Zabielski. But the Supreme Court has since said that Langford really was the right way of looking at things. That the guidelines operate as sort of... Is that... That's what the Supreme Court actually said? No, absolutely not. They did not identify Langford. You're asking us to infer that. I'm inferring that because the court really went to great lengths to explain how the guidelines operate as sort of... Well, if this... Look, if the Supreme Court wants to micromanage district court sentencings, it has the power to do that. But this court and Tomko made a pretty strong statement that we're not micromanaging sentencings. That the district judges are the so-called boots on the ground and that they get to... They're intimately familiar with the PSR. They get to know the defendant. They get to know the case. They've dealt with the case. And we have a pretty deferential view of sentencing. That doesn't mean we don't reverse them when... We do reverse them from time to time in sentencings. But I'm just not sure why we don't reverse them        and why we shouldn't take at the word of an experienced trial judge that she would have imposed the same sentence anyway. And again, it comes with a big caveat. If the transcript suggests some sort of drive-by, some sort of lack of attention to detail, mistakes of fact, all kinds of things could be reflected. But I didn't see any of that. This looked to me to be a very able sentencing. It was an able sentencing.            The only problem is if you're starting from the wrong offense level, you can't have any faith that the variance would have been the same. She wanted to vary downward. This court's authority is pretty standard. The government hasn't argued harmlessness in this case. I think there's a reason. If it had been starting from a different point, the judge might have come to a different conclusion. There's also... I think the offense level is like 15 to 21. There might have been other arguments        Even the guidelines... The guidelines for... There might have been arguments for a different kind of sentence. Those aren't presented when the guidelines are in the 37 to... If I could just ask a factual question. I... Forgetting procedural error by a judge in sentencing, I'm not aware off the top of my head of any reversal of a district judge's discretionary sentencing under 3553A absent a procedural problem. Are you? You're saying substantive error, reversals? In other words, a judge... We said in Tomko, I guess it was 09, that we may be repulsed by what the district judge there did in going from what could have been 36 months down to, I guess, almost zero. But discretion, the sentencing revolution, it basically puts discretion back in the hands of district judges who are the boots on the ground. In our court, do you know of any decision since 09 where we have reversed a district judge's ability to sentence based on that judge's discretion? There's one case out of the circuit. It begins with P. The name is escaping me right now, where there was a reversal based on a substantive unreasonableness argument. It really was, at the heart, a procedural unreasonableness. Right. Yes, there was one. But I'm not making a substantive unreasonableness claim. I'm saying there was procedural error and routinely you remand a situation. And my challenge is to you, presume that you are correct, that there was procedural error here. Otherwise, we don't even get to the secondary issue of the Zbilski analysis. I would urge you not to base your decision on a harmless error argument that wasn't even advanced by the government. And if you are thinking that way, I would respectfully request permission to provide a supplemental brief on that point. All right. Thank you very much, Ms. Petropoulou. Mr. Kokos. Good morning, Donovan Kokos, on behalf of the United States. Just a quick housekeeping matter on the standard of review. I briefed the brief as though nothing had been preserved except the force issue. But when I looked back at the Joseph opinion, it did indicate that the same arguments will track to the same. Thank you for stating that at the outset, because just in terms of my ability to mix and match along the way, rather than going seriatim and addressing the arguments raised by the appellant, you took the approach that you've just referred to, and it did make things, especially when you are in categorical approach land, which is every time we'll look at it, new territory with signs leading in different directions. And I'm sorry, that's not the only mistake I made in this, but that is one. I'm not criticizing any more than that. Yeah. I mean, you know, the fact is the argument about forces made to subsection three, and this is five years ago now, six years ago, and we knew even then he was convicted of one, so the whole thing should be plain error, except for the new argument about a robbery that could be committed by omission. That's just in the reply brief and not anywhere else. So that really, I think, should be waived, but I can actually... Well, before you... Oh, do you want to talk about the judge's statements? No, no, not yet. We'll get there. I'm very reluctant to say that there was forfeiture or waiver here. This case is a little bit like PEO in the sense that it was so long ago and things were so different then, and the way the case was litigated, I don't feel like it was teed up in a way that was sort of fair to the judge. And, you know, the defense counsel was arguing indivisibility, which I understand was not foreclosed at the time. I think it was a weak argument at the time, but it was certainly a fair argument. It wasn't clearly foreclosed. And so much was about the elements, and there was precious little about the enumerated offenses. So to me, it's... I don't know. I'm putting my cards on the table. There are three ways we can go. We could either send it back for a do-over in light of all the changed circumstances. We could say that Barry wins because there's a mismatch under the enumerated offense clause, or we could affirm for any reason stated by the record, one being that the district judge said the number's 30, and that's that. Or affirm because there is... I could show you why there isn't a mismatch. I absolutely can show you that. As far as the whole standard review issue and the length of time, Your Honors, we opposed all of these, all but the very first one of these motions to stay the case. Like Mark Harris was out there, and then Henderson and Borden later. We opposed it for this very reason. I mean, it seems like for Your Honors to say, well, we're just going to forgive forfeiture because so long has passed. Well, that's not fair to us. We wanted this thing decided based on whatever the extant law was. And I don't think there's any dispute that if we got this thing calendared within a year or so of this decision, we wouldn't have all these subsequent decisions. No one would be saying... The problem with forfeiture is, and it goes back to a bit of what we talked about in a case yesterday, forfeiture seems to relate to the defendant, but doesn't seem to relate to the government when it doesn't make an argument. What's good for the goose is good for the gander, right? Yeah, I think so. I mean, forfeiture, though, it just goes to the standard review. I'm not saying Your Honors can't consider the argument. I'm just saying it would be on plain error review. I'm not calling it a waiver. That's all. No, but I think Judge Amber's point is that the government didn't really hammer these enumerated offense arguments in the district court. Because the arguments weren't made. I mean, the opposition was not made to those, right? And to Your Honors' point, I mean, it's because the law was different, right? I mean, who has the burden to come forward? Well, we have the burden of producing the Shepard documents showing what he was convicted of, and then we did argue, here's why this qualifies under both. We addressed, we countered his arguments as to both the elements clause and the enumerated offense clause based on the law at the time and the arguments he'd made. You know, at some point, and this all goes back to Joseph. It depends on how closely you want to parse what an argument is. But it does seem to me, I get it. The law has changed. But still, I don't think we can forgive the parties for litigating in a different time and then say, you know, oh, and you got all these continuances or stays of this appeal so that you could get the advantage of this new law. I mean, that doesn't really, maybe you can find a way to make it work. It just doesn't strike me as totally necessarily fair. I don't know. Can we just run through the matching arguments that your opposing counsel has made, about five of them claiming that they didn't match. If we can start with those. Is that okay? The first one is whether 3701A1 does not require the use of force but can be encompassed with a forceless snatching. And that appears to be reviewed de novo. So let's assume for the sake of argument, everything your honor's reviewed is de novo. Let's just assume. So even if you do, I mean, so now it becomes under the enumerated offenses clause, you examine what the majority of the states do, plus learned treatises, plus the MPC. And I tried to break down, because Ms. Petropavlov didn't, I went and looked to see what all the states were doing and came up with totals. And I think in everything but one case, we came out ahead. We didn't always have more than 25 because sometimes there are outliers that seem to be doing their own thing. But so that's, I think, where you start. And on the force issue, the most important thing is, remember, the Mark Harris Pennsylvania Supreme Court said and this court agreed in Jenkins, you're all bound by the Pennsylvania State Supreme Court's interpretation of its own laws. So if I can show you all Pennsylvania Supreme Court decisions that say force is required for all the kinds of robbery, that really should settle the issue. And I can. It's in Ms. Petropavlov's opening brief. It's the Commonwealth versus Gregory Brown Supreme Court decision from 1984. In that one, the Supreme Court spent about three pages going through the history of robbery. Remember, a common law offense here, dating back to 1812 in the Snelling case, where the Supreme Court came up with this idea of actual force versus constructive force. Actual being force on the body, constructive being threats. And the Pennsylvania Supreme Court in Brown said 3701 comes along and it had five subsections at that time, all the same as far as we're concerned. And it reinstated the common law tradition, the common law standard, which is robbery is a forcible taking from another by violence or fear. Remember, you've got the words force and violence. It's just what Snelling said, of course, states had been doing all along, which is using those terms interchangeably in robbery. So you have the Pennsylvania Supreme Court saying that. And it says the grading is immaterial, except it just goes to show how much the legislature thought the punishments that needed to be ratcheted for the level of violence inflicted upon the victims. Robbery A1 is the most violent. It's a first degree felony. So you could say, well, maybe that's dictum, right? Because Brown was talking about subsections four and five. But then four years later, in a case called Commonwealth versus Stephen Duffy, D-U-F-F-E-Y, that's an A1 case because the victim died. And the Supreme Court says any amount of force is enough to bring the robbery within the statute. And it cites Brown. And then six years after that, in a case called Commonwealth versus Louis Thompson, Pennsylvania Supreme Court says that a robbery requires the commission of violence. The theft can be attempted, but the violence has to be completed. Commission is not omission, right? So you have a line of Supreme Court cases that are holding this. You don't have any cases. This is not like the ag assault area where you have cases applying, you know, an ag assault standard to omissions. A robbery at common law has always been and continues to be a commission. And that includes the force that's inflicted. Now the theft can be attempted, but the actual force has to be completed. That's what those cases say. Now I can tell you how to reconcile that with Mark Harris because Mark Harris comes along and says, well, aggravated assault, and I can see it's exactly the same operative language as in the robbery statute, subsection A1. But Mark Harris says, well, ag assault, two things are critical. One, ag assault is not a common law offense. The reason that matters is when it's a common law offense like robbery, there's still a presumption here in Pennsylvania that articulated by the Supreme Court in 1976 called Commonwealth versus Miller versus Eddie Miller that says you presume that the legislature when it enacted a statute on a common law crime did not intend to change the definition of that crime unless it explicitly so stated. So that's why robbery is different because ag assault is not a common law offense. Mark Harris tells us so. And so the way you get to an omission in Mark Harris is to say subsection 301 of the Title 18 subsection 301C is the omission statute. And that's the one that says an omission can take the place of an act if there's either something clear in the statute or else there's a duty. In the case of a common law offense, it just has to be clear in the statute. And not only is it not clear in the statute, we have several Pennsylvania Supreme Court cases interpreting the overall robbery statute, including subsection A1, to require the use of force. I'm sorry, that's long-winded, Judge Ambrose. No, no problem. Any other questions on that? I mean, the question, obviously the argument being that the Pennsylvania statute requires at least some type of force and that the generic requires nothing more than something, the minimalist force, whatever that might be. Let's go to the second one. Whether generic robbery, unlike 3701A1, requires force to be the means of taking the property. That is reviewed, I think, here for plain error, however. The parties agree that force would not be required to take property under 3701 because it's a continuing offense. That's probably the big argument you would make. That's right. I have no problem with that. Anybody want to talk about that one? Let's go to the third one. Whether 3701 is broader because it does not require a taking and could encompass attempted theft, but generic robbery requires a completed theft. That's also, I think, reviewed for plain error. Your comment on that? My argument was that I think, and I'm sorry, I don't recall the breakdown of the cases. This is, again, where you sort of look to see how the state cases and the treatises. The MPC says attempt can be enough. Yeah, my guess is that Barry would be relying on Scott. Right, yeah. And, I mean, my argument of that being, we have no problem with, as far as it goes, the definition of robbery and Scott McCants. I just don't think it included, I don't think it was complete. I think attempt can be part of generic robbery, at least based on my tabulation of the states. The fourth one is whether 3701 allows serious injury to be committed recklessly, but generic robbery requires intent. I believe that's also reviewed for plain error. Right, and I think Stoeckling kind of answers that because it says, you know, in common law, the statute, the way it's worded, actually, it looks like it would be strict liability almost. The way you get to importing recklessness is the gap filler statute that Pennsylvania took from the model penal code. So that's subsection 303B, I believe. It's either B or C. But it just says, you know, when there's no mens rea, then, you know, it's at least, it's knowing, intentional, or reckless. And then the last one. Before we go to that one, I mean, isn't it true that 31 states, D.C., and federal law do not permit charging someone with robbery for the reckless application of force? I don't think that is true. I can't remember my breakdown of the states in that. I only see nine states that define robbery to include theft committed with the reckless or accidental infliction of bodily injury. Oh, as far as like including, so I think it may be flipped around. I think a minority of them require more than recklessness. The majority either specifically say recklessness or it's like Pennsylvania, they have the gap filler statute where recklessness gets inserted that way. Now, but I mean, again, like if you look at the Adair case out of Texas, they said, well, Texas law, you know, it looks like strict liability, but this is all occurring within the context of an attempted or completed theft. So the intent almost gets imported in that way. The fifth, and which may be the strongest argument for Mr. Berry, whether 3701 allows property to be taken outside the presence of another person, but generic property, generic robbery does not. Right. Your response to that. So, yeah, first of all, I mean, I hedged a little when I was saying, well, I'm not sure whether generic robbery does, because what was in my mind was all the threat statutes of robbery. And I was thinking, well, maybe you could phone someone and say, I'm going to kill you unless, but then when I looked in preparation for this argument to see if Pennsylvania had ever applied the robbery statutes that way, they haven't. They do appear to require a person be present. And so on that, I would say the states that Ms. Petropaulo is citing actually helped me. The superior court case called Moore that she cites actually involved a case where someone was in a store and they stole a stake and a security guard down the aisle saw the person do it, saw it happen. So it was that close. And then when the person went to leave the store, the security guard cut him off, a struggle ensued and the guard was hurt. The court said, that's not a robbery because the presence requirement wasn't met. It's not enough that you were close enough to see it. You have to have been close enough during the actual aspiration to stop it or have a physical conflict with somebody. So it doesn't appear that Pennsylvania... What about the 1979 Pennsylvania Supreme Court case in Kesting? So Kesting, and I think I distinguished that in my brief. So I believe that was the one where the defendant... They strangled the person in the hotel room and then took the car. Yeah, I think there the Supreme Courts, the way it dealt with it was by saying, well, robbery is a continuing offense. The intent doesn't have to coincide, completely with the actus reus. That I don't see. I don't see how that helps. It doesn't help Ms. Petropalo's assertion that awareness is somehow the lodestar in Pennsylvania because Kesting shows the victim might not have been aware. Well, the victim was dead by that point. The victim was dead by that. But the victim might not have even been aware of robbery. We don't know what the defendant said to... I'm going to kill you and take your car. We don't know if that happened. Right. So that's my point is I think... And I especially don't see how it's possible to cause serious bodily injury to someone where you're trying to steal their stuff and they're not present. I just logically I can't get there. And again, this is all... You have to look at this through the common law lens. Ms. Petropalo said the statutes overrule the common law. And it's true. The Pennsylvania Crimes Code did overrule the common law, but it's subject to that important exception I mentioned from the Eddie Miller Supreme Court case that you don't assume the legislature intended to completely jettison or change the definition absent something explicit. And we don't have that here. I'll let Ms. Petropalo respond to that. Can you go on to address our discussion about Zubilski? Yeah. So to sort of cut to the chase here, I didn't see that language in the sentencing transcript. When I was looking at this case, I saw Ms. Petropalo appealed the 3B1.B issue, which is a legal issue, and then also the Second Amendment issue. I read the transcript. I just didn't note that there. So I wasn't trying not to make it. I can tell you if I'd seen it, I'm not sure that it would have necessarily clicked because I've never seen that. I've never seen a judge do that before in my district. And I've done this like 17 years. I think I've been hoping... Ms. Petropalo is seeing it a lot, and you're not seeing it, but... But I'm sure she can cite cases. If she has seen it, I'm sure she can cite cases. I just haven't seen it. I mean, and it's luck of the draw. I'm not saying it hasn't happened. You're saying you haven't seen it. I haven't seen it. I didn't see it in this one. If I had seen it in this one, I absolutely would have said, you know, this is... I mean, I was not looking to be delving into 50 states times five. Is it worth talking about at all, or should we just deal with it on supplemental briefing? I was just about to ask. Ms. Petropalo has requested a supplemental briefing. I have no problem with supplemental briefing on that if your honors want it. I've seen other circuits where this sort of thing happens. The district court says, even if I'm going to do X. And it gets affirmed as long as whatever the district court did at sentencing was not perfunctory. And I know it wasn't that here because I remember reading that much. Well, I will personally say I'm very interested to see something about the frequency with which this occurs because it just is not present. I'm not saying it's never been present. I have seen it, but very, very infrequently over a passage of a lot of years. Yeah. I'm interested in it for no other reason than that. Yeah, in other circuits it seems to happen a lot. And I've sort of had circuit envy because I've watched that happening going, man, I wish, you know. I was not looking to delve into how. I don't have circuit envy. I like the circuit. I was not looking to delve into how 50 states times five different vectors did Robert. I mean, had I seen that, I absolutely would have been riding that horse first. But I just, I simply overlooked it in the sentencing training. Yeah, Jim, bro, right now, circuit envy is heavily dependent upon the weather forecast. You mean we still complain in July it was too hot? Yeah. All right. Well, we appreciate your candor on that, Mr. Kokos. Do you have any other thing you want to say about the matter or just wait until it's briefed? I'll just wait until it's briefed. Okay. Although I hope your honors like specifically say exactly what you want briefed just to help as closely as possible. Yeah. I mean, we're just going to, we'll issue an order that hopefully will give both sides the proper guidance. Okay. Thanks. We'll hear rebuttal. Thank you, your honors. If I could just clear up a factual misstatement by my friend on the other side, I think it would clear up the standard of review question. In the district court, the parties did argue, obviously, to begin, it's like a nested argument. They made it the statute's indivisible and no subsection qualifies. The defense counsel then argued this statute didn't satisfy the force clause. Subsection 1 didn't satisfy the force clause. She also argued that it didn't satisfy the enumerated offenses clause. The government never made an enumerated argument. We offered graves as the definition of generic. The government didn't counter that definition. At sentencing, defense counsel preserved those written arguments that Pennsylvania robbery didn't satisfy the force or enumerated offenses clauses at appendix 99. At 100, the court ruled, appendix page 100, the court didn't specify force clause or enumerated offense clause, frankly. The PSR identified only the force clause as the basis for holding sub 1 qualified as a crime of violence. So if your honors were to be looking to affirm or not affirm, you'd be doing it on an alternative basis. And when you look to see if we can affirm the district court's ruling that the force clause was right, you apply de novo review. I'm not aware of any case where a defense counsel has to anticipate the way the appellate court may or may not rule on a matter, raise all those objections preemptively in the district court to preserve argument. This, if you're getting to enumerated, it's because you're looking to affirm or not on an alternative basis, and that would be reviewed de novo. Are you saying the government didn't argue enumerated offense? They never argued the enumerated offenses clause, your honor. I thought I saw that. I thought both sides argued it, but just very sort of drive by that it was it was not the principal focus of the government. I argued force clause. They argued. And even though Pennsylvania authority was that reckless offenses can't satisfy the force clause, the government was seeking to overturn that authority and the initial state government. I mean, will you look at appendix 73 for me? Sure.  This is the government's brief in the district court, right? Supplemental memorandum, right? And you see the paragraph toward the bottom beginning with here, right above it. There's a statement that says the plain language of this section includes robbery as one of the enumerated offenses identified in 4B1.282. Right. That's the intro. Here's the statute that we're looking at. There was no enumerated offense clauses. There was no enumerated offense clause. That was there was no actual. This is not enumerated argument presented. They identified the statute. Obviously we all do that in our briefing, but they didn't make the argument. Defense counsel did argue that it wasn't enumerated. Right. Well, again, that was not. The focus was all in the elements. The focus was on the elements clause. My point is Mr. Peo shouldn't be held to the standard of having forfeited some argument. That wasn't the focus below. You're looking at this de novo. Should we affirm on an alternative basis? Because the district court at best made a force clause ruling. That's what the PSR had identified in the addendum. He identified the force clause. So I'm just suggesting plain air is absolutely not the standard review for enumerated. It is de novo review. And then I could make. I know the government pointed to these two cases, Duffy and Thomas. They weren't cited in its brief, so I can't speak to them. I'm not familiar with them. Is this the what force or is it to the presence issue? I'm honestly not sure. I wrote them down and looked in the brief to see if they'd been cited because I wasn't familiar with. Off the top of your head. Let's. My perception is that the presence issue may be one of the strongest argument you have. And he is saying that testing, for example, isn't really that apropos of what is needed under the P.A. statute versus the generic form. You want to address that? I'm sure Kessling was a taking, but not from the presence. But I'm I'm actually looking at the plain language. It was almost the idiosyncratic case and the person was already dead. Sure, but I'm I'm not even looking at the cases. We can look at the cases. We can look at Brandon. That's the most clear statement there is. But whatever whatever you think your best argument would be, that's fine. I have no problem. It's a statutory argument. Subsection five has that language taking from the person of another by force. However, slight subsections one through three do not have that language. And then we have the case law saying a trial court would be wrong to infer that the taking must be from a person. It's not in those subsections. It's in five only. And both of those cases that we cite in our briefing are very clear about that. Judge Ambrose, you and Judge Hardeman both asked about recklessness. That recklessness, that issue is a bit more complicated. I have pointed to cases and treatises in the briefing that show that reckless infliction of bodily injury, serious bodily injury, exists only in about five states. If you add reckless use of force, that bumps it up to about ten. But I think that our best support for that is the Department of Justice's own letter in 2023 to the Sentencing Commission where they recognize only several states have this kind of language. The model penal code as applied to robbery was not very influential. Elsewhere, the model penal code has been influential. It has been adopted. Model penal code is pretty much a starting point. I think we have said that the most important of the factors is what do other states do in following along. And it looks like the counting at times is a bit of a discrepancy. But anyway, you can address however that you want. Right. So we've gotten these five states that keep that model penal code language with a taking where serious bodily injury or bodily injury is inflicted. It could go up to maybe as many as nine, as Judge Hardiman pointed out. But if we're looking at the majority, the majority plainly do not allow for recklessness as to for it to satisfy a robbery statute. The one thing I, Mr. Cocos was talking about Brown. Brown is pretty specific. They're saying we, Pennsylvania, are electing to abandon the common law force requirement. When they put it back in, they put it in sub five. They don't somehow inject it into the language that's already existing in sub one through three that took it out in the first place. They put it into sub five. And we can talk about what that language means is a de minimis force or force. However, slight right. That takes us to Stokeling. But it doesn't mean that we put force into subsections one through three. We can't. Pennsylvania tells us that. And for as far as the examples, I make a point to case after case where a shoplifter becomes a robber if serious bodily injury is inflicted. And it's not that injury is being inflicted to some, like, phantom person. It's you're taking from one person. In the course of leaving, you might knock into a passerby in the parking lot. So the missing element there is taking by force. It's a taking and then a reckless infliction of injury. And Harris tells us you can cause injury without using force. Mr. Petropoulos, how long for the briefing? Two weeks makes sense. Or you need more time than that. Whatever would be helpful to the court. Two weeks. I think. Yeah, we'll we'll figure out page limit. It'll be about two weeks, but you can. You're forewarned. Thank you very much, counsel. We appreciate the argument. And we'll take the matter under advisement.